# Roden & Co *v*. Ellis.

*Bill in Equity to set aside Fraudulent Conveyance.*

1. *Fraudulent conveyance; rights of antecedent creditors as to mortgage; burden of proof.*—Where creditors of a mortgagor seek to have the mortgage executed by him set aside as a fraudulent attempt to defeat the payment of their debt which antedated the mortgage, the consideration for the mortgage being admitted, the burden of proof is upon the complainants to show that the mortgagor was financially embarrassed at the time of the execution of the mortgage, and that the mortgagee knew this fact; or had notice of facts which would have led to a discovery of such fact, if proper inquiry had been made.

2. *Same; conveyance by husband to wife to enable her to obtain loan; notice to mortgagee.*—Where a husband makes a voluntary conveyance of land to his wife to enable her to make a mortgage in her own name to secure a loan, and the mortgagee knows these facts, his rights un-

[Roden & Co. v. Ellis.]

der the mortgage are the same, so far as creditors of the husband are concerned, as if the husband had executed the mortgage personally and procured the loan directly to himself.

APPEAL from the City Court of Birmingham, in Equity. Heard before the Hon. W. W. WILKERSON.

The bill in this case was filed by the appellants as creditors of Mark O. Ellis, against the appellees, to set aside an alleged fraudulent conveyance by Mark O. Ellis of his property to Sarah Ellis, his wife, and to subject said property, which had been mortgaged by Sarah Ellis to the Iron State Building & Loan Company, to the payment of the complainants' indebtedness.

The bill alleges that in April, 1893, after the debts of Mark Ellis to complainants had been contracted, Ellis made a conveyance of certain real estate to his wife, Sarah Ellis, and that she, thereupon, at the same time, together with the said Mark Ellis, executed a mortgage on the property to the Iron State Building & Loan Co., to secure a loan of $3,500, contemporaneously made to her by said company. It is alleged that Mark Ellis was, at that time insolvent, that said conveyance to Sarah Ellis was voluntary and void, and that said conveyance and mortgage were made with an actual fraudulent intent on the part of said Mark Ellis to hinder, delay or defraud his creditors. It is charged that the attorney of the Iron State Building & Loan Company had notice that said conveyance to Sarah Ellis was voluntary, that he prepared such conveyance, and that he also had notice that Mark Ellis was largely indebted. It is sought to be shown that the loan was made by the Iron State B. & L. Company to Sarah Ellis instead of Mark Ellis, who had made application for the same, because its attorney became informed that Mark Ellis was indebted, and that it was at his instance that the property was conveyed by Mark Ellis to his wife and the loan then made to her. The contention of the Iron State Building & Loan Company is that it never had any notice, through its attorney or otherwise, that Mark Ellis was indebted to any one, and that the reason for making the loan to Sarah Ellis, instead of Mark Ellis was as follows : When application for the loan was made by Mark Ellis, the company agreed to make it provided his title to the real estate offered as security, was approved by the company's attorney ; that said attorney found, upon investigation,

that a portion of the property offered as security belonged to Mark and Sarah Ellis jointly, and thereupon informed Mark Ellis that as the wife could not mortgage her property for his debt, the loan could not be made while the title was in that condition; and that in order to avoid the difficulty, the attorney suggested to Mark Ellis to convey his interest in the property to his wife so that the loan might be made to her, to which Mark Ellis assented, and it was done accordingly. Mark Ellis conveyed the whole property to his wife and the company made the loan and paid the money over to her upon the execution of a mortgage by her and the said Mark Ellis, conveying the property in controversy.

On the final submission of the cause on the pleadings and proof, the chancellor decreed that the complainants were not entitled to the relief prayed for, and ordered the bill dismissed. From this decree the present appeal is prosecuted, and the rendition thereof is assigned as error.

FELIX E. BLACKBURN and KERR & HALEY, for appellants.—1.  A voluntary conveyance is a fraud upon existing creditors, and void *per se* as to them without any regard to the intentions of the parties and without regard to the circumstances of the grantor, or the extent of his indebtedness, or of the kind or volume of the property conveyed.—*Sides v. Scharff*, 93 Ala. 106; 3 Brick. Dig., 515, § 119, and cases cited.

2.  A sub-purchaser from a fraudulent vendee, who had knowledge or notice of the fraudulent nature of the first sale to his immediate vendor, will not be protected, even though he pays a fair price as to the purchase money.—*Hoyt v. Turner*, 84 Ala. 527; *Spira v. Hornthall*, 77 Ala. 137; *Craft v. Wilcox*, 102 Ala. 379; *Robinson v. Moseley*, 93 Ala. 70.

3.  Knowledge of the fact that Mark Ellis was conveying substantially all his property to Sarah Ellis, his wife, without consideration, was a sufficient circumstance to put the Iron State Building & Loan Co. on inquiry as to Mark Ellis' financial condition, which, if followed up, would have disclosed Mark Ellis' indebtedness.—*Cleveland &c. Co. v. Sibert*, 81 Ala. 140; *Hodge Bros. v. Coleman*, 76 Ala. 103.

4.  Where one innocent person of two must suf-

fer by the wrongful act of another, the one who enables such other to commit the wrong must be the one to suffer and bear the consequences.—*Spira v. Hornthall*, 77 Ala. 137; *Spraights v. Hawley*, 100 Amer. Dec. 452.

5. Where a conveyance from a husband to the wife is attacked as fraudulent by a creditor whose claim existed at the time of such conveyance, the burden of proving a consideration proportionate to the value of the land conveyed is upon such grantee, and clearer and fuller proof is required than in case of a transaction between strangers.—*Robinson v. Moseley*, 93 Ala. 90; *Wedgworth v. Wedgworth*, 84 Ala. 274.

CABANISS & WEAKLEY, *contra.*—1. There was a valuable consideration for the conveyance from Mark Ellis to Sarah Ellis, such consideration being the agreement on the part of the Iron State B. & L. Company to make the loan to Sarah Ellis, and the said conveyance from Mark Ellis being a part of the same transaction by which the loan was made to the said Sarah Ellis. They were connected transfers.—2 Bigelow on Fraud, 444, 482; *Thompson v. Webster*, 7 Jur. N. S. 531; *Harman v. Richards*, 10 Hare 81; *Marden v. Babcock*, 2 Met. 99; *Ex parte Hern*, 1 Buck 165.

2. The mere fact that a purchaser has notice that his grantor's title was not founded on a pecuniary consideration is not sufficient to make it his duty at his peril, to inquire whether the title of his grantor was not fraudulent.—Bump on Fraud. Conv., 465; *Frazer v. Western*, 1 Barb. Ch. 220. A *bona fide* purchaser from a fraudulent grantee acquires a good title as againt the creditors of the grantor.—*Thames v. Rembert*, 63 Ala. 561; *Allen v. Maury*, 66 Ala. 10; *Holden v. Rison*, 77 Ala. 515; *Kyle v. Ward*, 81 Ala. 120; *Anderson v. Roberts*, 9 Amer. Dec. 235; *Thomas v. Mead*, 19 Amer. Dec. 187; *Danberg v. Robinson*, 82 Amer. Dec. 244.

3. An innocent mortgagee who parts with value stands precisely in the same attitude as a purchaser of the absolute title, so far as the creditors of the fraudulent grantor are concerned.—*Rogers v. Adams*, 66 Ala. 600; *Coleman v. Smith*, 55 Ala. 369; *McCall v. Rogers*, 77 Ala. 349. The burden of proof is on complainants to show that the Iron State B. & L. Company had notice of the fraudulent intent of Mark Ellis, if he had any such

fraudulent intent.—*Robinson v. Levi*, 81 Ala. 134; *Bank v. Dawson*, 68 Ala. 57; *Shealy v. Edwards*, 75 Ala. 411; *Hodges v. Coleman*, 76 Ala. 103.

COLEMAN, J.—Appellants, creditors of Mark O. Ellis, filed their bill to reach and subject certain property mortgaged by Sarah Ellis, his wife, to the Iron State Building & Loan Company to secure a loan made to her. The bill alleges that the property was conveyed to the wife, without consideration and for the purpose of hindering and defrauding the creditors of the husband, all of which was known to the mortgagee, or at least the mortgagee had notice of facts which should have prompted investigation, and which would have led to a discovery of the facts and ·purposes, if proper inquiry had beed made. The title to a portion of the property was already in the wife, and had been for many years prior to the accrual of the claims of the creditors. Although the consideration for the purchase of the property moved from the husband solely, his subsequent creditors can have no claim upon it, except upon proof of actual fraud, of which the mortgagee is chargeable with notice. The evidence falls far short of showing that a joint interest was conveyed to the wife for a fraudulent purpose. The wife and the conveyances to her by the husband, may be eliminated, and we have the case of a debtor, mortgaging his property to effect a loan. The debts antedated the loan and mortgage. The rules which apply to such cases have been often declared by this court. The consideration for the mortgage being admitted, the burden was on the complainants to establish the necessary facts which reasonably show fraud; and in the present case, it was incumbent upon them at least to show that M. O. Ellis was at the time embarrassed financially, and that the mortgagee had notice of it, or knowledge of facts calculated to put him upon inquiry. This burden has not been met by the complainants. True, M. O. Ellis testifies that he furnished Cabaniss a statement of his indebtedness before the loan was effected, and on direct examination testified, that his property was insufficient to meet his liabilities, but on cross-examination, he swears that his total indebtedness did not exceed $4,200, and that his available assets exceeded $9,000. On the other hand,

Cabaniss denies in toto, that at that time, he had any knowledge whatever of the indebtedness of M. O. Ellis, and to the same effect is the evidence of the officers of the mortgagee company. The evidence of Mr. Hill is, substantially, that the loan had been agreed upon and the mortgage and note for the loan executed, before any statement of the indebtedness of M. O. Ellis was rendered to Cabaniss, but according to his best recollection, the money had not been actually received by Sarah Ellis, before the statement of Ellis' indebtedness was furnished to Cabaniss. It is not necessary to consider the question as to whether the notice subsequently given to Cabaniss, in his capacity as attorney for the Loan Company, should be charged to the mortgagee, under the facts of the case ; for, giving complainant the full benefit of a favorable decision of this question, the testimony of Hill is full and clear, that the statement furnished Cabaniss showed that the indebtedness of Ellis was less than $4,000, and his assets were of not less value than $12,000. Although the mortgagee knew that the conveyance from M. O. Ellis to his wife was voluntary and made to enable her to effect a loan in her name, the mortgagee is entitled to the same rights, so far as creditors of the husband are concerned, as if the husband had executed the mortgage personally and effected the loan directly to himself.

Complainants do not seek to redeem the property, but assail the validity of the deed to the wife, and the mortgage executed by her. We will not, therefore, consider the question, as to whether complainants, being creditors of the husband, could redeem, from under the mortgage executed by the wife, property voluntarily conveyed to her by the debtor. There is no difficulty as to the law of the case presented, and we are of opinion the evidence is clearly with the respondents.

Affirmed.